IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA LAYTON, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, Commissioner | : | |
| of the Social Security Administration, | : | **No. 21-1390** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                    JUNE 6, 2022

Joshua Layton seeks review of the Commissioner of Social Security's denial of his application for disability insurance benefits. After the Court referred this matter to U.S. Magistrate Judge Scott W. Reid for a Report and Recommendation, Judge Reid recommended that the Court deny Mr. Layton's request for review. Mr. Layton has filed objections to Judge Reid's Report and Recommendation.

For the reasons that follow, including a thorough review of the record and the Report and Recommendation, the Court overrules Mr. Layton's objections, adopts the Report and Recommendation, and denies the request for review.

### BACKGROUND

Mr. Layton is 42 years old. He obtained a GED in 2016. He has previously worked as a general contractor and golf course crew supervisor.

Mr. Layton applied for disability insurance benefits on November 8, 2018, alleging disability since March 10, 2017 based on degenerative joint disease, a back injury, head injuries, shoulder injuries, knee injuries, sinus issues, migraine headaches, GERD, and dyslexia. Doc. No. 18, at 1. His claim was denied on March 26, 2019, and Mr. Layton requested a hearing before an Administrative Law Judge ("ALJ"). A hearing before an ALJ was held on December 11, 2019.

Testimony was presented by Mr. Layton and a vocational expert.

After the hearing, the ALJ issued a decision that Mr. Layton was not disabled under the Social Security Act. The ALJ made the following findings:

1. Mr. Layton meets the insured status requirements of the Social Security Act through June 30, 2023.

2. Mr. Layton has not engaged in substantial gainful activity since March 10, 2017, the alleged onset date.

3. Mr. Layton has the following severe impairments: Osteoarthritis, Enthesopathy, Degenerative Disc Disease, Degenerative Joint Disease, Hearing Loss, and Obesity.

4. Mr. Layton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. Mr. Layton has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with never climbing ladders, ropes, or scaffolds and occasional overhead reaching with the left upper extremity. He can tolerate occasional contact with supervisors, coworkers, and the public.

6. Mr. Layton is unable to perform any past relevant work.

7. Mr. Layton was born on November 5, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Mr. Layton has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering Mr. Layton's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

11. Mr. Layton has not been under a disability, as defined in the Social Security Act, from March 10, 2017, through the date of this decision.

R. 14–24, Doc. No. 12-2.

Mr. Layton asked the Appeals Council to review the ALJ's decision. The Appeals Council denied his request, making the ALJ's decision the Commissioner's final determination.

Mr. Layton then filed this action seeking judicial review of the final decision denying his claim for disability insurance benefits. Judge Reid issued a Report and Recommendation concluding that substantial evidence supported the Commissioner's decision and, accordingly, that Mr. Layton's request for review should be denied. Mr. Layton filed objections, which the Commissioner argues should be overruled.

## LEGAL STANDARD

When a party makes a timely and specific objection to a portion of a magistrate judge's Report and Recommendation, the district court reviews the issues raised on objection *de novo*. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

However, the district court may review the ALJ's final decision only in order to determine "whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Stated differently, the court "is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The court may not "weigh the evidence," *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently," *Hartranft*, 181 F.3d at 360.

3

An ALJ's decision must present sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). While the ALJ need only discuss the most pertinent evidence bearing upon a claimant's disability status, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially significant, probative evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008); *Cotter*, 642 F.2d at 706.

A claimant such as Mr. Layton bears the burden of proof on the issue of disability. In other words, a claimant must show that he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations implementing the Act, the Commissioner uses a five-step sequential process to determine whether a person is "disabled." This process requires the Commissioner to consider whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination of impairments; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) has a residual functional capacity to perform the claimant's past relevant work; and (5) is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

The claimant satisfies the burden of proving disability by showing an inability to return to his past relevant work. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Once the claimant makes this showing, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs existing in the economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

DISCUSSION

Mr. Layton objects to Judge Reid's Report and Recommendation. He challenges how the ALJ evaluated his subjective allegations of pain and his reported daily activities. For the reasons below, the Court overrules Mr. Layton's objections.

## I.     The ALJ Did Not Fail to Properly Evaluate Mr. Layton's Subjective Allegations

Mr. Layton claims that he experiences serious pain that prevents him from working any job. In his objections, Mr. Layton asserts that the ALJ failed to properly evaluate his subjective allegations of pain. He asserts that the lack of objective signs of pain does not mean that he does not suffer from disabling pain.

It is true that the lack of objective signs of pain does not automatically disprove disability. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984) ("[W]hile there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself."). But, as Magistrate Judge Reid explains, the ALJ did *not* rely only on Mr. Layton's lack of objective signs of pain.

In evaluating symptoms such as pain, the ALJ should consider "all of the available evidence, including . . . medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect him." 20 C.F.R. § 404.1529(a). Mr. Layton cites SSR 16-3, which provides guidance on § 404.1529, to argue that the ALJ must consider other factors besides lack of subjective pain.

Magistrate Judge Reid explains that the ALJ did conduct the required analysis by including "not only a discussion of the objective medical evidence, but also a detailed consideration of [Mr.] Layton's own testimony, his activities of daily living, and statements provided by [Mr.] Layton's medical sources." Doc. No. 18, at 5. The ALJ specifically applied SSR 16-3 and discussed Mr. Layton's subjective allegations of pain in the context of his medical history and statements about

his activities of daily living. R. 20–22, Doc. No. 12-2. Weighing this evidence is the ALJ's assigned role as the fact-finder, so the Court may consider only whether the ALJ conducted the proper analysis. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (stating that a claimant's statements concerning his symptoms must be carefully considered, but "the ALJ is not required to credit them").

Upon independent review of the record, the Court agrees that the ALJ properly evaluated Mr. Layton's subjective allegations of pain pursuant to 20 C.F.R. § 404.1529(a) and will overrule Mr. Layton's first objection.

## II.   The ALJ Properly Considered Mr. Layton's Ability to Lay Flooring

Next, Mr. Layton objects that if the ALJ had any doubt about his subjective allegations of pain based on his ability to lay a floor in May 2018 without pain, the ALJ should have "questioned him before relying on his ability to lay floors to his detriment." Doc. No. 19, at 2.

Magistrate Judge Reid did not address this argument, possibly because Mr. Layton's opening brief focused on his ability to drive rather than lay floors:

> Lastly, the ALJ referred to Mr. Layton's ability to fish in March 2018 and lay floor in his house in May 2018 to discredit his allegations. (Tr. 20) If the ALJ had any doubts regarding Mr. Layton's allegations, he should have questioned him before relying on the travel to his detriment. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("Had the ALJ been concerned about the significance of the settlement, he could have questioned Roddy about it at the hearing.")

Doc. No. 13, at 8.

Mr. Layton argues that that if the ALJ doubted his credibility, he should have directly questioned Mr. Layton, as courts often do. However, the ALJ did hear from Mr. Layton himself and, as is clear from the record, asked Mr. Layton a number of open-ended questions to assess his credibility.

Additionally, the only authority Mr. Layton cites for the proposition that an ALJ has a duty to specifically question the claimant is a Seventh Circuit Court of Appeals case involving an ALJ's duty "to inquire about a claimant's reasons for not seeking treatment" as established by agency regulation. *Roddy v. Astrue*, 705 F.3d 631, 638–39 (7th Cir. 2013). The requirement at issue in that case is specific to consideration of the reasons for not seeking medical treatment. SSR 96–7, at *7–8. Here, there is no dispute that Mr. Layton sought treatment including shoulder surgeries and injections, so the *Roddy* case is not on point for this dispute.

The record shows that the ALJ carefully considered Mr. Layton's ability to lay flooring in the context of the timeline of his shoulder treatment. Mr. Layton had surgery on his left shoulder in October 2017. On February 1, 2018, after completing physical therapy, he was released with a five-pound lifting restriction. By May 2018, Mr. Layton told his doctor that he was able to lay a floor at his house without pain. At his one-year post-operative examination, Mr. Layton's doctor found that he was able to lift up to 25 pounds with his left arm.[1] In March 2019, the State agency physician found Mr. Layton "capable of lifting or carrying twenty pounds occasionally and ten pounds frequently" and "limited reaching overhead with the left arm." R. 21.

In contrast, at the June 2021 ALJ hearing, Mr. Layton testified that he sometimes "can't get a gallon jug out of a refrigerator" using his left arm, has difficulty lifting laundry baskets, can only vacuum for short periods of time, and has difficulty putting on a belt. R. 44–46. It was in this context that the ALJ noted that Mr. Layton's "hobbies and his activities around the home are quite inconsistent with his allegations regarding the intensity, persistence, and limiting effects of his impairments, particularly the left shoulder problems." R. 20. The ALJ mentioned laying a floor as one example among other activities, such as driving a vehicle and mowing his yard with

---

[1] Mr. Layton then applied for disability insurance benefits on November 8, 2018.

a riding lawnmower. *Id.* Comparing this testimony with Mr. Layton's medical history, the ALJ found:

> [T]he claimant's longitudinal treatment records indicate improvement in left shoulder functioning and decrease in pain following recovery from the left shoulder surgery. While there is still some residual decrease in strength and in range of motion, he was able to regain use of the left arm and shoulder.

R.20.

Based on an independent review of the record, the Court finds that the ALJ properly considered Mr. Layton's post-surgery report to his doctor of his ability to lay a floor without pain. *See Johnson*, 529 F.3d at 202–03.

## III.   The ALJ Properly Considered Mr. Layton's Daily Activities

Lastly, Mr. Layton objects that the Magistrate Judge and ALJ failed to explain how his "limited daily activities undercut Mr. Layton's allegations regarding his disabling limitations." Doc. No. 19, at 2. He emphasizes that when he is home, he is able to take breaks from activities but "this is not possible in a typical full-time employment position." *Id.*

But the ALJ and the Magistrate Judge both properly considered Mr. Layton's daily activities. As Judge Reid thoroughly explained:

> The pertinent Social Security regulation specifically includes 'daily activities' as a factor to be considered by an ALJ in evaluating the intensity and persistence of a claimant's pain. 20 C.F.R. § 404.1529(c)(3)(i). Layton's activities of daily living included at least occasional activities as strenuous as fishing and laying flooring. Record at 373, 382. He routinely did light housework, drove a car, and mowed the lawn with a riding lawn mower. Record at 195-7.
>
> Layton criticizes the ALJ's reliance on such activities to discredit his allegations of disabling pain. He points out that household tasks are less stressful than competitive work, and that they allow for breaks at the option of the individual, citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), and *Harsh v. Colvin*, No. 3:13-CV-42 GLS, 2014 WL 4199234 at *4 (N.D.N.Y. Aug. 22, 2014). He also cites *Draper v. Barnhart*, where the Court of Appeals for the Eighth Circuit wrote: "the test is whether the claimant has the ability to perform the requisite physical acts day in and day out . . . In other words, evidence of performing general housework does not preclude a finding of disability." 425 F.3d 1127, 1131 (8th

Cir. 2005). Further, the Court of Appeals for the Third Circuit has said: "it is well-established that sporadic or transitory activity does not disprove disability." *Smith v. Califano*, 637 F.2d 968, 971-2 (3d Cir. 1981).

Although the cases cited by Layton are relevant, they do not undermine the ALJ's decision. The ALJ did not make a general finding that Layton could work because of his "sporadic or transitory activities", as the *Smith v. Califano* court expressed. Instead, he specified that Layton's ability to drive and lay flooring demonstrated an ability to "reach in front and apply some force" with his left upper extremity. Record at 20.

Further, while fishing and laying floor may be "sporadic or transitory" activities, housekeeping, driving, and mowing the lawn are not. They are routine and frequently repeated activities. The ability to perform general housework may not *preclude* a finding of disability. *See Trotta v. Berryhill*, Civ. A. No. 17-1556, 2018 WL 6737449 at **11-12 (E.D. Pa. Dec. 21, 2018). Nevertheless, it remains a factor to be considered, among others, as an example of activities of daily living under 20 C.F.R. § 404.1529(c)(3)(i). *See Fisk v. Commissioner of Social Security*, Civ. A. No. 20-228, 2021 WL 3887730 (W.D. Pa. Aug. 31, 2021) at *1, n.2 ("There was ... nothing inappropriate in the ALJ considering Plaintiff's activities of daily living in evaluating the severity of Plaintiff's symptoms and limitations. ... He needed to determine Plaintiff's [Residual Functional Capacity], and he was obligated to consider all of the evidence, including activities of daily living, in making this finding.").

Finally, although the ALJ found Layton capable of performing light work, he identified as an alternative several sedentary jobs he would be capable of performing. Record at 23. He certainly did not find that Layton was capable of laying flooring or winding a fishing rod "day in and day out," as expressed by the *Draper* court.

R. & R. at 7–9, Doc. No. 18.

Mr. Layton does not dispute that the ALJ considered the other required factors. Rather, Mr. Layton's challenge is really one to the weight that the ALJ gave this factor. But "[c]redibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009). Weighing the evidence is the role of the fact-finder, and the ALJ was entitled to rely on the contradictory nature of some of Mr. Layton's statements in denying his claim. "In view of the evidence presented in the record and of the ALJ's 'opportunity to observe the demeanor and to

determine the credibility of the claimant,' these findings are entitled to 'great weight' and should be upheld." *Id.* (quoting *Cotter*, 642 F.2d at 705). Where substantial evidence supports the ALJ's determination, as is the case here, the Court is bound to that uphold that decision.

CONCLUSION

For the foregoing reasons, the Court overrules Mr. Layton's objections, adopts Judge Reid's Report and Recommendation, and denies Mr. Layton's request for review. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE